BEA, Circuit Judge,
concurring in part and concurring in judgment:
I join the great majority of Chief Judge Kozinski’s opinion, because it clearly comes to the correct conclusion under the deferential standard of review we are required to apply under AEDPA. But I *1191 cannot join the portions of the opinion at the beginning and the end where the majority ventures to determine, in what sounds to me very much to be de novo review, that Meras’s constitutional rights were “probably” violated. See Op. 1186; 1190. Under 18 U.S.C. § 2254(d), we must determine only whether the California courts unreasonably applied federal law as determined by the Supreme Court. Raising the issue whether Meras’s rights were actually violated is not part of this case. I therefore do not join the panel majority in its observation that Meras’s constitutional Confrontation Clause rights were “probably” violated.
1.
As a matter of current constitutional law, it is clear after Melendez-Diaz that DNA reports like the one at issue here are “testimonial statements,” and so a defendant has a Sixth Amendment right to confront in open court whoever carried out the test, arrived at the result, and prepared the report proffered as proof of the test and its result. That does not end the matter, though. Were we reviewing this case de novo, we would be faced with two additional, difficult questions because there are two exceptions to the strict requirements of the Confrontation Clause that may be applicable here. I discuss them briefly only to signal that the questions are difficult and unresolved, and that I therefore do not think we can conclude that Meras’s Confrontation rights “probably” were violated. I offer no answers to the questions.
First, the Supreme Court recognized an exception to the general rule that a testimonial statement may not be admitted into evidence absent the declarant’s availability for cross-examination. Crawford v. Washington, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The exception applies where the declarant is “unavailable to testify, and the defendant had a prior opportunity for cross-examination.” Id. Because Lawson, the criminalist who prepared the report, testified at Meras’s first trial, the second prong of the exception has been met. The harder question is whether Lawson was constitutionally “unavailable” for purposes of the Sixth Amendment because she went to visit her dying mother in the hospital rather than testify a second time—at least, that is what an unsworn, uncross-examined prosecutor said in court.
The question is hard for two reasons. First, the Supreme Court has rarely addressed what it means to be “unavailable” for Confrontation Clause purposes. In the few cases it has squarely answered this question, it has articulated a standard: the prosecution must show it made a “good-faith effort” to secure the testimony of a witness. See Ohio v. Roberts, 448 U.S. 56, 75, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). With the exception of one recent case applying AEDPA’s deferential standard of review,[1] the Court has not revisited the standard for constitutional unavailability in the wake of the change in Sixth Amendment doctrine brought about by Crawford. Further, the Court’s primary “unavailability” cases have not addressed a case quite like this, where the absent witness’s appearance at the retrial had been secured by the prosecution, but the witness then was absent from court on the day of her scheduled testimony because of a recent development: the hospitalization of the witness’s mother.
*1192 The uncertain legal landscape is clouded by the incomplete factual record presented in this appeal. Neither party focused serious attention on the unavailability issue, so we know little about the circumstances leading up to Lawson’s failure to testify. We have but one statement from the prosecutor that Lawson was unavailable because her “mother has cancer and is dying and had to be readmitted into the hospital.” Were this statement the end of the matter, I admit the prosecution may not have met its burden to show it made a “good-faith” effort to secure Lawson’s appearance. Yet we do not have the entire state court record on appeal. Were we actually addressing this issue on de novo review, we would need to know more about these circumstances to determine if this meets the test for constitutional unavailability. Was Lawson’s mother in a hospital out of town, or nearby? Did the prosecutor know about her absence in advance? Did the prosecutor take any affirmative steps to try to compel or coax Lawson to testify, or did he quickly acquiesce and find Spriggs? How long would the trial have to have been postponed to accommodate Lawson? We do not know.
Second, and entirely independent of that question, Spriggs’ testimony may also fall under a specific “supervisor” exception to Crawford identified by Justice Sotomayor in her concurrence in Bullcoming v. New Mexico, — U.S.-, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In that case, the prosecution had introduced into evidence the results of a blood test through the testimony of a colleague of the actual analyst, and the colleague who testified “had neither observed nor reviewed [the primary author’s] analysis.” Id. at 2712. The Court held this substitute testimony of this colleague was not the equivalent of the actual analyst’s for purposes of the Confrontation Clause. Id. at 2710.
But Justice Sotomayor, who provided the fifth vote for the majority and wrote a separate concurrence, specifically observed that Bullcoming had a “limited reach” and was “not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue.” Id. at 2722 (Sotomayor, J., concurring). Whether that person may be permitted to testify in place of the report’s primary author under the Confrontation Clause was therefore explicitly left open. Id.
Our case implicates that open question. Spriggs was Lawson’s supervisor. She testified that she was “the one that technically reviewed the case notes for this case and signed as technical reviewer.” Bull-coming did “not address what degree of involvement [with a report’s preparation] is sufficient” to allow a supervisor to testify in place of the primary author, but Spriggs may have had enough involvement here to satisfy the Confrontation Clause. Id. at 2722; see also Op. 1190-91. Again: we do not know. The issue is unresolved.
2.
Were we reviewing this case de novo, we would be forced to answer those questions to determine if Meras’s Confrontation Clause rights were violated. The ultimate resolution of these legal questions will be important in the wake of Crawford, a “landmark decision” that drastically changed the landscape of the Confrontation Clause. Ocampo v. Vail, 649 F.3d 1098, 1107 (9th Cir.2011). But, especially given the incomplete record on appeal, today is not the day to decide these difficult questions, nor even to hint at their ultimate resolution. Congress has required us to decide this case under the deferential standard created by AEDPA, whereby we determine whether the state court’s deci *1193 sion, at the time it was rendered, “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States”—not whether it was correct. 18 U.S.C. § 2254(d)(1). In habeas cases, just as in every case we decide, we should remember the “cardinal principle of judicial restraint”: “if it is not necessary to decide more, it is necessary not to decide more.” PDK Labs., Inc. v. DEA, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment).
To be sure, the majority does not explicitly “decide” these questions, but rather it says that Meras’s Sixth Amendment rights “probably” were violated. The trouble with saying this in an opinion is that the Federal Reporter is not the same thing as a law review. The latter, not the former, is the appropriate venue for speculation as to how hypothetical legal questions would be resolved. After all, the majority’s statement, in a published opinion, that Meras’s rights were “probably” violated will have ramifications in future cases that we or other courts will have to decide some day. When that future case is before a court, a nice quotation from a Ninth Circuit opinion can provide powerful ammunition for lawyers, even if the quotation is dicta. This is especially important to us because dicta, in the Ninth Circuit, can have precedential effects. See McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1329 (9th Cir.2012).[2]
In sum, I fully agree that the California courts did not unreasonably apply Sixth Amendment law here, and therefore I concur in the judgment of the court to affirm denial of the writ. I cannot agree, however, that we should express any opinion at all on the unresolved questions that are also addressed by the majority.

. See Hardy v. Cross,-U.S.-, 132 S.Ct. 490, 181 L.Ed.2d 468 (2011) (per curiam). Because of the deferential standard of review the Court applied in that case, it did not go into the specifics of what constitutes a "good-faith effort” for purposes of the "unavailability” doctrine.

. Expressing an opinion on whether some action "probably” violated the Constitution were there to be a de novo review could even affect the outcome of future § 1983 actions. Our case likely will not have such effects, since prosecutors are absolutely immune from suit for their conduct “in presenting the State’s case” in court. See Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). However, if our court were to get into the business of saying what we thought of the de novo merits of every AEDPA case, that could affect a subsequent decision addressing whether a right was "clearly established” for qualified immunity purposes. As the Supreme Court has said in the context of evaluating § 1983 claims where defendants are entitled to qualified immunity, venturing an opinion on the de novo merits when doing so is not necessary to the ultimate disposition "comes at a price”: the "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case” and the "risk of bad decision-making.” Pearson v. Callahan, 555 U.S. 223, 236, 239, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).